# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| NOTTINGHAM-SPIRK DESIGN ASSOCIATES, INC., | Case No. 1:21-cv-00341 |
| Plaintiff, | Judge J. Philip Calabrese |
| v. | Magistrate Judge Thomas M. Parker |
| HALO INNOVATIONS, INC., *et al.*, | |
| Defendants. | |

## OPINION AND ORDER

This case involves a contractual dispute between Plaintiff Nottingham-Spirk Design Associates, Inc. and Defendant Halo Innovations, Inc. Plaintiff also named as Defendants Aden & Anais, Inc., the parent company of Halo Innovations, and Swander Pace Capital, LLC, Swander Pace Capital V, LP, and Swander Pace Capital VI, LP, the companies which own a controlling interest in Aden & Anais. Aden & Anais and the Swander Defendants move to dismiss on the ground that the Court lacks personal jurisdiction over them or, alternatively, that Plaintiff fails to state a claim on which relief can be granted. (ECF No. 23; ECF No. 29.) For the reasons that follow, the Court **GRANTS** Defendants' motions.

## FACTUAL BACKGROUND

On this motion to dismiss, the Court takes the following allegations in the first amended complaint as true and construes them in Plaintiff's favor.

A.     **First Amended Complaint**

Nottingham-Spirk Design Associates partners with other companies to develop new products in the consumer, healthcare, and business sectors. (ECF No. 19, ¶ 9, PageID #140.) Halo Innovations manufactures a product called the Halo BassiNest® Swivel Sleeper. (*Id.*, ¶ 10, PageID #140.) Aden & Anais, Inc. sells products for infants and young children, including swaddles, blankets, bedding, bibs, and clothing. (*Id.*, ¶ 11, PageID #141.)   Swander Pace Capital, Swander Pace Capital V, and Swander Pace Capital VI are private equity firms specializing in consumer products such as those that Aden & Anais and Halo Innovations design and sell. (*Id.*, ¶¶ 13–14, PageID #141.)  Swander Pace Capital owns a controlling interest in Aden & Anais. (*Id.*, ¶ 14, PageID #141.)  In 2016, Aden & Anais acquired Halo Innovations. (*Id.*, ¶ 16, PageID #142.) The managing director of Swander Pace Capital sits on the board of Aden & Anais. (*Id.*, ¶ 16, PageID #141.)

Before 2010, Halo Innovation's primary product was The SleepSack®, a wearable blanket for infants. (*Id.*, ¶ 21, PageID # 143.) In 2010, Nottingham-Spirk agreed to assist Halo Innovations in developing a new generation of sleep products for consumers. (*Id.*, ¶¶ 22–24, PageID #143.)  As a result of Nottingham-Spirk's collaboration with Halo Innovations, the Halo BassiNest® Swivel Sleeper was introduced to consumers in 2014. (*Id.*, ¶¶ 47, 55, PageID #147, #148.) Nottingham-Spirk received a royalty from Halo Innovations based on sales of the Halo BassiNest® Swivel Sleeper. (*Id.*, ¶ 56, PageID #148.) Those royalties grew each year from 2014 through 2019 as the BassiNest® Swivel Sleeper and related products became more successful. (*Id.*, ¶ 57, PageID # 148.)

2

In 2020, however, the royalty payments decreased. (*Id.*, ¶ 68, PageID #154; ECF No. 35-1, ¶ 15, PageID #352.) When Nottingham-Spirk inquired about the reason for the decrease in royalties, Aden & Anais responded by stating that "[a] new product line was launched in December 2019, and we have been phasing out the product developed with Nottingham-Spirk over the course of 2020." (ECF No. 19, ¶¶ 68–69, PageID #154.) As a result, Nottingham-Spirk has not received royalties since the fourth quarter of 2020. (ECF No. 19, ¶ 37, PageID #145.)

**B.     Declarations**

With respect to personal jurisdiction, the parties submit declarations setting forth the following facts.

For Swander Pace Capital, a vice president declared that it has offices in California, New Jersey, and Toronto, but not in Ohio. (ECF No. 23-1, ¶ 3, PageID #197.) Nor does Swander Pace Capital own real estate in Ohio or have employees in the State. (*Id.*; *id.*, ¶ 4.) No one at Swander Pace Capital has been to Ohio in connection with the firm's work for Aden & Anais or Halo Innovations. (*Id.*, ¶ 5.) Finally, the firm has no agreement with Nottingham-Spirk. (*Id.*, ¶ 6.)

For Aden & Anais, the company's chief commercial officer provided a declaration. (ECF No. 29-2.) He declares that Aden & Anais was "not involved in Halo's performance under the alleged contract." (*Id.*, ¶ 6, PageID #288.) From 2014 to 2020, Halo Innovations made royalty payments to Nottingham-Spirk from its bank account. (*Id.*, ¶ 7, PageID #288–89.) Aden & Anais did not make royalty payments or make reports about royalties to Nottingham-Spirk. (*Id.*, PageID #289.) The products at issue do not contain Aden & Anais branding (*id.*, ¶ 8), Halo Innovations

3

sells the products at issue (*id.*) and does so through separate websites and using its own phone numbers and customer-support infrastructure (*id.*, ¶ 9). Aden & Anais acquired Halo Innovations in 2016—years after the contract and amendment at issue were executed. (*Id.*, ¶ 10.) Aden & Anais sells products to retailers and consumers in Ohio. (*Id.*, ¶ 11.) It has a single employee, an account manager, who works out of his home in Ohio. (*Id.*, ¶ 12.) The rest of the company's 72 employees do not work in Ohio. (*Id.*, ¶ 13.)

As relevant to the issue of personal jurisdiction, the declaration of John Nottingham provides the following relevant facts. ([ECF No. 35-1](#).) On June 10, 2020, the global controller for Aden & Anais emailed Nottingham-Spirk a form requesting information relating to payment of royalties. (*Id.*, ¶ 7, PageID #351; *id.*, PageID #354.) On the same day, the company responded. (*Id.*, ¶ 8, PageID #351; *id.*, PageID #354.) A week later, an account manager for Nottingham-Spirk requested certain information about the payment of royalties. (*Id.*, ¶ 9, PageID #351.) When Nottingham-Spirk did not receive a response, the company initiated a series of inquiries on September 15, 2020. (*Id.*, ¶ 11, PageID #351; *id.*, PageID #357.) On December 15, 2020, the global controller for Aden & Anais responded. (*Id.*, ¶ 14, PageID #352; *id.*, PageID #359.) Then, the controller for Aden & Anais and Nottingham-Spirk corresponded about the reasons for the decline in royalty payments. (*Id.*, ¶¶ 15–17, PageID #352–53; *id.*, PageID #362–63.)

## STATEMENT OF THE CASE

Plaintiff asserts three claims against Swander Pace Capital, Aden & Anais, and Halo Innovations: (1) breach of contract (Count I), (2) quantum meruit/unjust enrichment (Count II), and (3) a claim for an accounting (Count III). (ECF No. 19, ¶¶ 76–94, PageID #155–57.) In separate motions to dismiss, Swander Pace Capital and Aden & Anais move to dismiss on two grounds: (1) lack of personal jurisdiction under Rule 12(b)(2); and (2) failure to state a claim under Rule 12(b)(6). (ECF No. 23; ECF No. 29.)

## ANALYSIS

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff has the burden of proving the court's jurisdiction over every defendant. "Personal jurisdiction must be analyzed and established over each defendant independently." *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (citation omitted). To establish personal jurisdiction over a defendant, the Court must find that (1) the defendant is amenable to service of process under the State's long-arm statute; and (2) the exercise of personal jurisdiction is proper under the federal Due Process Clause. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). "Even if a defendant's contact with the State of Ohio satisfies Ohio's long-arm statute, personal jurisdiction fails unless exercising jurisdiction over the defendant comports with traditional notions of fair play and substantial justice." *J.M. Smucker Co. v. Hormel Food Corp.*, 526 F. Supp. 3d 294, 300 (N.D. Ohio 2021). Jurisdiction is determined as of the commencement of the action. *See, e.g.*, *Mollan v. Torrance*, 22

5

U.S. (Wheat.) 537, 539–40 (1824) ("[T]he jurisdiction of the Court depends upon the state of things at the time of the action brought.").

"Personal jurisdiction falls into two categories: general and specific." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 501 (6th Cir. 2020) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Here, Plaintiff concedes that Defendants are not subject to the Court's general jurisdiction. (ECF No. 34, PageID #315; ECF No. 36, PageID #336.) Therefore, Plaintiff must demonstrate that the Court may exercise specific jurisdiction over Defendants.

## I. Specific Jurisdiction

Swander Pace Capital and Aden & Anais submit declarations in support of their motions (ECF No. 23-1; ECF No. 29-2) and Nottingham-Spirk provided a declaration in opposition (ECF No. 35-1). Based review of the briefs and declarations on each motion to dismiss for lack of personal jurisdiction, the Court exercises its discretion to decide the motions without an evidentiary hearing. Therefore, the Court considers the pleadings and declarations in the light most favorable to Plaintiff. *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017); *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998) (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)). And Plaintiff "need only make a *prima facie* case of jurisdiction." *Conn*, 667 F.3d at 711. In this procedural posture, Plaintiff's burden is "relatively slight." *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988).

6

### I.A. Ohio's Long-Arm Statute

In April 2021, the Ohio General Assembly extended the State's long-arm statute to the limits of the Constitution. *See* Ohio Rev. Code § 2307.382(C) ("[A] court may exercise personal jurisdiction over a person on any basis consistent with . . . the United States Constitution."). However, that amendment post-dates the events at issue, and Plaintiff filed suit before that amendment to Ohio's long-arm statute took effect. Because that amendment does not apply, the Court first examines Ohio's long-arm statute as in effect prior to the amendment before turning to personal jurisdiction under the Constitution. *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006). Ohio's long-arm statute confers specific personal jurisdiction over a defendant who engages in any of nine acts that occur "in this state." Ohio Rev. Code § 2307.382(A)(1)–(9).

Plaintiff points to the provision in the statute that confers jurisdiction where a person causes tortious injury in Ohio by an act or omission outside the State under various circumstances that the allegations implicate. *Id.* § 2307.382(A)(6). Defendants do not contest that this provision of Ohio's long-arm statute applies. That concession is puzzling because Plaintiff asserts contract—not tort—claims against Swander Pace Capital and Aden & Anais. For that reason, the Court cannot say that this provision of the long-arm statute applies.

Ohio's long-arm statute also reaches any person who transacts any business in the State. *See id.* § 2307.382(A)(1). This provision reaches Aden & Anais. The company sells products to retailers and consumers in Ohio and has an account manager who works from his home in Ohio. (ECF No. 29-2, ¶¶ 11 & 12, PageID #289.)

7

But the record does not establish that Swander Pace Capital meets even this liberal standard. It has no office in Ohio, owns no real estate in Ohio, and has no employees in the State. (ECF No. 23-1, ¶¶ 3, 4 & 5, PageID #197.) Nor has anyone from the firm traveled to Ohio in connection with Aden & Anais or Halo Innovations. (*Id.*, ¶ 5.) For these reasons, the Court doubts that Plaintiff meets its slight burden to make out even a *prima facie* case that the Ohio long-arm statute reaches Swander Pace Capital.

### I.B. Due Process

Specific personal jurisdiction comports with due process under the Constitution where "the defendant has sufficient minimum contacts such that traditional notions of fair play and substantial justice are not offended." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (cleaned up). In making this determination, courts examine whether (1) the defendant purposefully avails himself of the privilege of acting or causing a consequence in the forum State; (2) the cause of action arises from the defendant's activities there, and (3) the defendant's acts or the consequences of those acts have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable. *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) (quoting *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)); *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1299 (6th Cir. 1989). Maintenance of the suit as a result of defendant's contacts with the forum State must also not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945).

### I.B.1. Personal Jurisdiction Over Swander Pace Capital

In the event Ohio's long-arm statute reaches Swander Pace Capital, the Court addresses the two grounds Plaintiff asserts for the exercise of specific personal jurisdiction over the firm.

### I.B.1.a. Control of Aden & Anais

First, Plaintiff argues that the Court has specific jurisdiction over Swander Pace Capital because it controls Halo Innovations through Aden & Anais and that it is directly involved in the business decisions that resulted in this lawsuit. (ECF No. 34, PageID #315.) In short, Plaintiff argues that Swander Pace Capital is subject to personal jurisdiction through ownership of Aden & Anais, the parent company of Halo Innovations. (*Id.*, PageID #315–16; *see also* ECF No. 19, ¶¶ 12–15, PageID #141.) Plaintiff's assertions, taken as true, do not suffice for the Court to exercise specific jurisdiction over Swander Pace Capital.

Specific jurisdiction "exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). "[T]he question of whether a defendant has purposefully availed itself of the privilege of doing business in the forum state is 'the *sine qua non* for in personam jurisdiction.'" *CompuServe*, 89 F.3d at 1263 (quoting *Southern Mach.*, 401 F.2d at 381–82). In other words, there must be a substantial connection between Defendant's conduct and the forum State such that the defendant would "reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

On the facts presented, even construed in Plaintiff's favor, Swander Pace Capital has no contacts with the forum relating to the royalties at issue or the subject matter of the claims Nottingham-Spirk asserts. Indeed, the only connection between Swander Pace Capital and Ohio is its ownership of Aden & Anais—one step removed from Halo Innovations. In fact, the first amended complaint does not allege that Swander Pace Capital was a party to the contract that is the subject of this litigation. Due process requires that a defendant be haled into court in a forum State "based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (quoting *Burger King*, 471 U.S. at 475). Simply put, mere ownership of an entity that in turn owns a party in interest does not satisfy the demands of the Constitution.

### I.B.1.b. Alter Ego

Plaintiff also argues that specific jurisdiction is proper under an alter-ego theory. Under the alter-ego theory of personal jurisdiction, "a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008) (citation omitted). The alter-ego theory of personal jurisdiction is akin to piercing the corporate veil of a parent corporation. Generally, a parent corporation is not liable for the acts of its subsidiary, even if the subsidiary is wholly owned. *Transition Healthcare Assocs., Inc. v. Tri-State Health Invs., LLC*, 306 F. App'x 273, 280 (6th Cir.

2009). "In extraordinary cases, however, courts will pierce the corporate veil and disregard the corporate entity, treating the parent corporation and its subsidiary as a single entity." *Id.* (cleaned up).

One such example of an extraordinary case where courts pierce the corporate veil is where the plaintiff alleges that the parent corporation had "effective control over the commercial policy and business decisions of its subsidiaries, and did business through its subsidiaries." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 450 (6th Cir. 2012). This case, however, does not present an extraordinary case. On the record, construed in Plaintiff's favor, the Court cannot say that Nottingham-Spirk has made out a *prima facie* case that Swander Pace Capital exerted so much control over Halo Innovations such that the two entities are one and the same. Nor does the record support a *prima facie* showing that Swander Pace Capital did business through Halo Innovations. *Cf. Third Nat. Bank in Nashville v. WEDGE Grp. Inc.*, 882 F.2d 1087, 1090 (6th Cir. 1989) (concluding that specific jurisdiction was proper over a parent company where the company owned 100% of the subsidiary; its officers visited the subsidiary as often as monthly to review and direct its operations; the parent company shared income tax liability; and the parent company's officers served as the subsidiary's board of directors). Therefore, even under the light burden in the current procedural posture, Plaintiff is not entitled to rely on the alter-ego theory as a basis for specific jurisdiction over Swander Pace Capital.

11

\* \* \*

For these reasons, the Court lacks specific personal jurisdiction over Swander Pace Capital. Therefore, the Court **GRANTS** Swander Pace Capital's motion to dismiss under Rule 12(b)(2). (ECF No. 23.)

### II.B. Personal Jurisdiction Over Aden & Anais

Plaintiff argues that the Court has personal jurisdiction over Aden & Anais because (1) Aden & Anais was directly involved in the decisions regarding the sale of Bassinest® Swivel Sleeper products; and (2) Halo Innovation's conduct should be attributed to Aden & Anais. (ECF No. 35, PageID #336–40.) The Court addresses each argument in turn.

#### II.B.1. Personal Jurisdiction through Aden & Anais's Contacts

Plaintiff asserts that Aden & Anais directs and controls Halo Innovations as its parent company with respect to selling products, including the Halo BassiNest® Swivel Sleeper. (ECF No. 19, ¶¶ 12 & 15, PageID #141.) In addition, Plaintiff alleges that a particular member of Aden & Anais's board of directors acts as a "key party" in Halo Innovations' product planning, sales, and marketing. (*Id.*, ¶16, PageID #141–42.) Further, Plaintiff points out that the global controller of Aden & Anais corresponded with Nottingham-Spirk about payment of royalties from Halo Innovations (ECF No. 35-1, ¶¶ 17–18, PageID#352–53), though the declaration from Aden & Anais states that the company "did not make royalty payments or provide royalty reports to Nottingham-Spirk" (ECF No. 29-2, ¶ 7, PageID #289). In the present procedural posture, the Court reads these competing declarations to establish that Aden & Anais did not provide formal reports about royalties to Nottingham-

12

Spirk, but did communicate with Nottingham-Spirk about payment of royalties and the reasons for reduced and delayed payments. Plaintiff argues that this record establishes specific jurisdiction over Aden & Anais. (ECF No. 35, PageID #337.)

Plaintiff relies on the Supreme Court's recent decision in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021). In two consolidated appeals, the Supreme Court considered whether an auto manufacturer was subject to specific jurisdiction in Montana and Minnesota in products-liability suits stemming from car accidents that occurred in those States. Ford conceded that it did substantial business in Montana and Minnesota; "it actively [sought] the market for automobiles and related products in those States." *Id.* at 1026. But Ford contended that personal jurisdiction was improper because the specific cars involved in the accidents were not sold in the forum States and because the company did not engage in activity in those States giving rise to the product liability claims. *Id.* 1022. Rejecting this argument, the Supreme Court concluded that "Ford had systemically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States." *Id.* at 1028. Consequently, there was a "strong relationship among [Ford], the forum, and the litigation—the essential foundation of specific jurisdiction." *Id.* (cleaned up).

Plaintiffs' allegations here differ materially from those in *Ford*. There, the defendant systematically entered the market in the States where it faced suit by advertising, selling, and servicing the models of vehicle at issue in the litigation. *Id.* at 1022. In contrast, Aden & Anais has limited and attenuated contacts with Ohio.

13

It has a single employee in Ohio, a recently hired account manager with no connection to the case. (ECF No. 29-2, ¶ 12, PageID #289.) Other than being the parent company of Halo Innovations, the only connection between Plaintiff's claims against Aden & Anais and the forum is fairly limited correspondence between the two companies about the royalties. Even then, the record shows that Aden & Anais did not pay the royalties, Halo Innovations did. (*Id.*, ¶¶ 7 & 9, PageID #288–89.) For specific jurisdiction to attach, "there must be an affiliation between the forum and the underlying controversy." *Ford*, 141 S. Ct. at 1025 (cleaned up). On the record presented, Plaintiff has not carried its relatively slight burden of establishing a *prima facie* case for the exercise of specific jurisdiction over Aden & Anais.

### II.B.2. Personal Jurisdiction through Halo Innovations

Plaintiff also argues that the attribution and alter-ego theories provide a means for the Court to exercise specific jurisdiction over Aden & Anais. These distinct theories of personal jurisdiction have some similarities. The attribution theory provides that personal jurisdiction over a parent company is appropriate if the parent company "purposefully avails itself of doing business in the forum by accessing the market through a subsidiary." *In re Telectronics Pacing Sys., Inc.*, 953 F. Supp. 909, 919 (S.D. Ohio 1997). In other words, the parent company "uses the subsidiary to do what it otherwise would have done." *Id.* On an alter-ego theory, jurisdiction over a parent company is appropriate where "the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for personal jurisdiction." *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir.2008). Both theories set aside corporate

14

formalities as a fiction and treat separate corporate entities, parent and subsidiary, as one and the same for purposes of personal jurisdiction. *See e.g.*, *In re Telectronics Pacing Sys., Inc.*, 953 F. Supp. at 919 ("The attribution test implies that the in-forum subsidiary is acting on behalf of the absent parent."); *Keller v. Honeywell Protective Servs.*, 742 F. Supp. 425, 428 (N.D. Ohio 1990) ("The general rule is that a subsidiary corporation has its own 'citizenship' different from the parent corporation, unless under the alter ego exception to the rule, the subsidiary is not really a 'separate entity.'").

Under either theory, Plaintiff has not established a *prima facie* case for the exercise of specific personal jurisdiction over Aden & Anais.

Plaintiff's allegations are insufficient for the Court to exercise specific jurisdiction over Aden & Anais under the attribution theory or alter-ego theory. As important as what Plaintiff has alleged in this case is what Plaintiff has not alleged.

Nothing in the record suggests that Aden & Anais has disregarded the corporate formalities of Halo Innovations. In this regard, the record shows that a board member of Aden & Anais had some involvement in the business of the company's subsidiary. Without more, that fact falls far short of the threshold necessary to disregard corporate formalities. Nor does the record show that Aden & Anais opted to conduct business in Ohio through its subsidiary. Again, only the unremarkable fact that Nottingham-Spirk communicated with Aden & Anais about the royalties at issue in this case connects Aden & Anais to the forum. In effect, Plaintiff argues that Aden & Anais is subject to the Court's jurisdiction because it is

15

the parent company of Halo Innovations. But that is not a sufficient basis for the exercise of specific jurisdiction.

* * *

Accordingly, the Court lacks specific personal jurisdiction over Aden & Anais and **GRANTS** Aden & Anais's motion to dismiss under Rule 12(b)(2).

## II. Jurisdictional Discovery

Plaintiff requests leave to amend its complaint and conduct jurisdictional discovery. ([ECF No. 34](), PageID # 325–26; [ECF No. 35](), PageID #345–46.) "[A] district court faced with a motion to dismiss for lack of personal jurisdiction over the defendant may permit the plaintiff further discovery to investigate jurisdictional facts." *Theunissen v. Matthews*, 935 F.2d 1454, 1456 (6th Cir. 1991). A plaintiff, however, is not entitled to jurisdictional discovery; the plaintiff must, at a minimum, "give the district court a reasonable basis to expect that discovery would reveal evidence that supports the claimed jurisdiction." *C.H. By and Through Shields v. United States*, 818 F. App'x 481, 484 (6th Cir. 2020).

Here, discovery is unlikely to result in a finding that the Court has personal jurisdiction over Swander Pace Capital or Aden & Anais. Plaintiff has not identified with any specificity how discovery might support a finding of personal jurisdiction. Discovery is not required based on mere hope or speculation. *See A.O. Smith Corp. v. United States*, 774 F.3d 359, 369 (6th Cir. 2014) (holding that the district court did not abuse its discretion in denying jurisdictional discovery in FTCA case where plaintiffs could only "speculate" that government documents "might" contain

16

information relevant to jurisdiction). Therefore, the Court **DENIES** Plaintiff's request for jurisdictional discovery.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motions to dismiss for lack of personal jurisdiction. ([ECF No. 23](#); [ECF No. 29](#).) Because the Court concludes that it lacks personal jurisdiction over Swander Pace Capital and Aden & Anais, it need not address their motions under Rule 12(b)(6). Further, the Court **DENIES** Plaintiff's request for jurisdictional discovery.

**SO ORDERED.**

Dated: May 19, 2022

J. Philip Calabrese
United States District Judge
Northern District of Ohio